IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TIMOTHY ALLEN MAYE )
)
v. ) No. 3:14-1615
) Judge Campbell/Bryant
SOCIAL SECURITY ADMINISTRATION )

To: The Honorable Todd J. Campbell, District Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's applications for disability insurance benefits and supplemental security income, as provided under Titles II and XVI of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which defendant has responded (Docket Entry No. 13). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

## I. Introduction

Plaintiff filed his applications for benefits on December 8, 2010, alleging disability onset as of November 18, 2010. (Tr. 11) His applications were denied at the initial

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of his case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on January 10, 2013, when plaintiff appeared with counsel and gave testimony. (Tr. 27-51) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until February 20, 2013, when he issued a written decision finding plaintiff not disabled. (Tr. 11-20) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since March 15, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hypertension, hepatitis C, partial amputations of the right great toe and second toe, tinnitus, hernia, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

[5.] After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can only frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; cannot climb ladders, ropes, or scaffolds; and cannot work at unprotected heights or around unguarded moving machinery. He can perform simple, routine, and repetitive tasks with detailed, but not complex instructions and with gradual and infrequent workplace changes.

[6.] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

[7.] The claimant was born on November 20, 1953 and was 56 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

[8.] The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

[9.] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

[10.] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

[11.] The claimant has not been under a disability, as defined in the Social Security Act, from November 18, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-15, 18-19)

On June 6, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following review of the record is taken from plaintiff's brief, Docket Entry No. 12-1 at pp. 2-3:

Records contain x-ray results of the right foot from November 20, 2009. Findings showed status post amputation of the great toe and second toe. R. 243.

Records in the file from the VA Medical Center show assessments of Hepatitis C, hypertension, hyperlipidemia, GERD, foot pain, reflux, low back pain, and allergic rhinitis. R. 257 and 372.

Treatment notes indicate that the Plaintiff has a history of polysubstance abuse. [Urinary drug screen] results from March 15, 2010, were positive for cocaine. R. 421.

Dr. Michael Loftin performed a consultative examination on April 8, 2011. He assessed the Plaintiff with major depressive disorder, single episode, moderate. Dr. Loftin completed a Medical Source Statement and assigned moderate limitations in the ability to understand, remember, and carry out simple instructions and in the ability to respond appropriately to the general public, coworkers, and supervisors. R. 326-329.

Audiometric testing from April 13, 2011, revealed hearing sloping from mild to moderate [loss] in the right ear and mild to severe [loss] in the left ear. R. 384.

An x-ray of the left knee was performed on June 10, 2011. Findings showed degenerative narrowing of the medial joint compartment. R. 376.

An esophagogram was performed on July 1, 2011, due to continued dysphagia. Findings revealed a small sliding hiatal hernia. R. 505-506.

(Docket Entry No. 12-1 at 2-3)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that

agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the record contains substantial evidence that could have supported an opposite conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4

(S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred by relying on the vocational expert's testimony to the existence of representative jobs which the plaintiff's RFC would allow him to perform, inasmuch as the three jobs which the expert identified by reference to their coded Dictionary of Occupational Titles (DOT) number are in fact inconsistent with plaintiff's RFC, by the terms of their DOT listings. For the reasons stated in the government's response, the undersigned finds no merit in plaintiff's argument. First, plaintiff points out that the job of assembler is identified in the DOT as requiring light, not medium, exertion. Be that as it may, the vocational expert specifically testified that he was referring to "assembler at medium." (Tr. 48) Accordingly, there is no conflict between the DOT description of assembler as a light occupation, and the vocational expert's testimony to the existence of jobs within that occupation which require a medium level of exertion. See Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 605 (6th Cir. 2009). Even if the expert had not specifically delineated the job as "assembler at medium," there would be no error. See Conn v. Sec'y of Health & Human Servs., 51 F.3d 607, 610 (6th Cir. 1995) (finding that the vocational expert's identification of a job as sedentary, when the DOT identified it as light or

7

medium, did not render the expert's testimony unreliable).

Finally, plaintiff's contention that the ALJ's reliance upon a job which the DOT identifies as light "is significant, as the Plaintiff is disabled under the Medical-Vocational Guidelines with a light residual functional capacity" (Docket Entry No. 12-1 at 6), has been addressed and overruled as a matter of law by the Sixth Circuit. In <u>Anderson v. Comm'r of Soc. Sec.</u>, 406 Fed. Appx. 32, 35-37 (6th Cir. Dec. 22, 2010), the court considered a claimant's contention that the ALJ's reliance upon sedentary jobs, identified by a vocational expert as available to the claimant who had an RFC for light work, should dictate the application of a sedentary grid rule pursuant to which a finding of disability would be directed for the claimant. The <u>Anderson</u> court recognized this argument as a non-sequitur, holding as follows:

> That is not how the system operates. The RFC is based on the claimant's particular disabilities, an inquiry wholly independent from what jobs are available in the regional and national economy. The VE does not testify as to what the claimant is physically capable of doing, but rather as to what jobs are available, given the claimant's physical capabilities. Thus, in a step-five analysis, the VE's testimony depends upon the RFC and not the other way around. Significantly, every court to have considered the precise argument that Anderson makes here has rejected its underlying understanding of the law. . . . A person who has a residual capacity for light work generally also can perform sedentary work....

<u>Id.</u> at 36 (internal citations omitted).

The government further points out that plaintiff's argument regarding the identified job of production helper is flawed. With respect to this job, plaintiff argues that the DOT-required job duty of dumping ingredients into grinding or mixing machines would "clearly require[] him to work around unguarded moving machinery" (Docket Entry No. 12-

8

1 at 7), which the ALJ found him restricted from doing. However, the government points out that the DOT listing for this occupation explicitly states that it does not involve exposure to unprotected heights or moving machinery. 1991 WL 674732. Inasmuch as the ALJ properly relied upon the vocational expert's testimony to the existence in the national economy of 200,000 combined assembler and production helper jobs, the undersigned concludes that substantial evidence supports the finding of a significant number of available jobs made by the ALJ at the fifth step of the sequential evaluation process, even if the climbing required in the store laborer job would be precluded by plaintiff's RFC. See Garvin v. Astrue, 2011 WL 3205350, at *12-13 (M.D. Tenn. July 26, 2011) (citing cases).

Plaintiff's remaining arguments are (1) that his diagnosed degenerative joint disease of the left knee should have been explicitly evaluated in the ALJ's analysis of his severe impairments, and (2) that an explicit "function-by-function" assessment should have been included in the ALJ's determination of his RFC. Neither argument has merit.

Regarding plaintiff's left knee, the ALJ recognized his allegation of knee pain in considering his subjective symptoms at the fourth step of the sequential evaluation process. (Tr. 17) Accordingly, any error in failing to consider the knee condition at step two is harmless. Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). Although plaintiff refers to a well documented diagnosis of degenerative joint disease, the record reflects that he complained of knee pain to his doctor once, on June 9, 2011 (Tr. 393); his pain did not limit range of motion in the knee and was treated with Naprosyn (Tr. 17, 394-95); x-rays revealed only minimal degenerative changes in the knee with no bony abnormality (Tr. 376); and, plaintiff does not appear to have complained of knee pain to any

9

physician thereafter. He testified before the ALJ that the knee will become irritated depending on how long he is on it. (Tr. 36) Clearly, the ALJ did not err in failing to further account for plaintiff's alleged left knee impairment beyond the exertional and postural limitations he found in determining plaintiff's RFC.

Regarding the alleged failure to perform a function-by-function assessment in determining plaintiff's capacity for exertional work, as required by Social Security Ruling 96-8p, the Sixth Circuit has explained this requirement as follows:

> In *Bencivengo [v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)]*,* the Third Circuit stated, "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Bencivengo,* slip op. at 4. The Third Circuit distinguished between what an ALJ must consider and what an ALJ must discuss in a written opinion. The ALJ need not decide or discuss uncontested issues, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Bencivengo,* slip op. at 5.

Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547-48 (6th Cir. Mar. 4, 2002). Here, beyond the general assertion that "the ALJ failed to include substantial limitations in the RFC finding correlating to symptoms and limitations which were well-documented in the record" (Docket Entry No. 12-1 at 9), plaintiff has failed to specify any inconsistencies that went unresolved by virtue of the ALJ's failure to consider or discuss any particular functional limitation, and the undersigned finds none.

In sum, the decision of the ALJ is supported by substantial evidence on the record as a whole. That decision should therefore be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 14th day of September, 2015.

     s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE